AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

### EASTERN District of PENNSYLVANIA

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| HARRY MURRAY | ) | Case No.  CR 12-388-05 |
| | ) | |
| *Defendant* | ) | |

12-8315-WM

FILED by ___ D.C.

AUG 0 8 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*  HARRY MURRAY                                                           ,
who is accused of an offense or violation based on the following document filed with the court:

X  Indictment        ❏  Superseding Indictment        ❏  Information        ❏  Superseding Information        ❏  Complaint

❏  Probation Violation Petition        ❏  Supervised Release Violation Petition        ❏ Violation Notice        ❏ Order of the Court

This offense is briefly described as follows:

CONSPIRACY TO PARTICIPATE IN RACKETEERING ENTERPRISE 18:1962;
PROHIBITION OF ILLEGAL GAMBLING BUSINESS 18:1955; MONEY LAUNDERING
CONSPIRACY 18:1956; INTERSTATE TRAVEL IN AID OF RACKETEERING 18:1952;
TRANSMISSION OF WAGERING INFORMATION 18:1084; STRUCTURING TRANSACTIONS TO
EVADE REPORTING REQUIREMENT 31:5324; 18:2 Aiding & Abetting

Date:      Aug 1, 2012

_____, Deputy Clerk
*issuing officer's signature*

City and state:     PHILADELPHIA, PA

MICHAEL E. KUNZ, CLERK OF COURT
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____                           _____ *Arresting officer's signature* |
| _____ *Printed name and title* |

AO 442 (Rev. 01/09) Arrest Warrant (Page 2)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| | : | |
| v. | : | DATE FILED: _____ |
| | : | |
| JOSEPH VITO MASTRONARDO, JR. | : | VIOLATIONS: |
| JOHN MASTRONARDO | : | |
| JOSEPH F. MASTRONARDO, | : | 18 U.S.C. § 1962 (conspiracy to |
| a/k/a "Joey," | : | participate in a racketeering enterprise - |
| ERIC WOEHLCKE | : | 1 count) |
| HARRY MURRAY | : | 18 U.S.C. § 1955 (prohibition of illegal |
| JOSEPH VITELLI | : | gambling business - 1 count) |
| ANNA ROSE VITELLI | : | 18 U.S.C. § 1956 (money laundering |
| PATRICK TRONOSKI | : | conspiracy - 4 counts) |
| EDWARD FEIGHAN | : | 18 U.S.C. § 1952 (interstate travel in |
| KENNETH COHEN | : | aid of racketeering - 8 counts) |
| SCHUYLER TWADDLE | : | 18 U.S.C. § 1084 (transmission of |
| MICHAEL LOFTUS | : | wagering information - 8 counts) |
| MICHAEL SQUILLANTE | : | 31 U.S.C. § 5324 (structuring transactions |
| DAVID ROUNICK | : | to evade reporting requirement - 1 count) |
| RONALD GENDRACHI | : | 18 U.S.C. § 2 (aiding and abetting - 3 |
| JOANNA MASTRONARDO | : | counts) |
| | : | Notices of forefeiture |

## INDICTMENT

**THE GRAND JURY CHARGES THAT:**

## COUNT ONE

### (18 U.S.C. Section 1962(d))

## THE ENTERPRISE

1.      At all times relevant to this indictment, in Montgomery County, in the

Eastern District of Pennsylvania, and elsewhere, defendants

**JOSEPH VITO MASTRONARDO, JR.,
JOHN MASTRONARDO,
JOSEPH F. MASTRONARDO,
a/k/a "Joey,"**

**ERIC WOEHLCKE,**
**HARRY MURRAY,**
**JOSEPH VITELLI,**
**ANNA ROSE VITELLI,**
**PATRICK TRONOSKI,**
**EDWARD FEIGHAN,**
**KENNETH COHEN,**
**SCHUYLER TWADDLE,**
**MICHAEL LOFTUS,**
**MICHAEL SQUILLANTE,**
**DAVID ROUNICK, and**
**RONALD GENDRACHI,**

and others known and unknown to the grand jury, were members and associates of the

Mastronardo Bookmaking Organization.  The Mastronardo Bookmaking Organization was a

criminal organization based in the Eastern District of Pennsylvania whose members and

associates engaged in crimes, including illegal gambling, money laundering, interstate travel in

aid of racketeering, and the interstate and international transmission of wagering information.

      2.      The Mastronardo Bookmaking Organization, including its leadership,

membership, and associates, constituted an "enterprise" as defined in Title 18, United States

Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise was

engaged in, and its activities affected, interstate and foreign commerce.  The enterprise

constituted an ongoing organization whose members and associates functioned as a continuing

unit for a common purpose of achieving the objectives of the enterprise.

### PURPOSE OF THE ENTERPRISE

      3.      It was a purpose of the enterprise to obtain money for its members and

associates by operating an illegal gambling business, and laundering the proceeds of that

business.  It was also a purpose of the enterprise to maintain, protect and attempt to expand the

2

power, territory and profits of the enterprise through the recruitment of additional individuals who would establish betting accounts and place sports bets on the internet and on the telephone.

## MANNER AND MEANS OF THE ENTERPRISE

4. The manner and means used by the enterprise to further its goals and achieve its purposes included the following:

(a) The Mastronardo Bookmaking Organization was headquartered in Montgomery County, Pennsylvania, and had members and associates throughout the United States and in Costa Rica. Defendant JOSEPH VITO MASTRONARDO, JR., and his brother, defendant JOHN MASTRONARDO, were two leaders of the Mastronardo Bookmaking Organization.

(b) The Mastronardo Bookmaking Organization used internet websites, which included but were not limited to www.betroma.com and www.betrose.com, to conduct its bookmaking activities. In addition to the websites, the Mastronardo Bookmaking Organization also used telephone numbers to conduct its bookmaking activities. Bets were placed in Pennsylvania and elsewhere in the United States by use of the internet and telephone. The websites and telephone numbers were staffed and supported by individuals who resided in Costa Rica. A bettor could use the website or a telephone number to place sports bets on football, baseball, basketball, golf, horse racing, and other sporting events.

(c) The Mastronardo Bookmaking Organization required a bettor to establish a betting account. The betting account consisted of an account number and a password. The betting account was typically set-up by an agent or sub-agent who worked for the Mastronardo Bookmaking Organization. These agents and sub-agents worked in Pennsylvania and elsewhere

3

in the United States.

        (d)     The Mastronardo Bookmaking Organization did not require a bettor to put money into their betting account before placing a bet. As such, immediately after setting up a betting account, a bettor could begin placing sports bets through the website or over the telephone. In this way, the Mastronardo Bookmaking Organization extended credit to its bettors as soon as they established a betting account.

        (e)     The Mastronardo Bookmaking Organization did require a bettor to enter their account number and password on the website, or give their account number and password over the telephone, before placing a sports bet. The odds for these sports bets were published on the website, and were detailed over the phone. The results of a bettor's winning and losing sports bets were recorded on the website.

        (f)     The Mastronardo Bookmaking Organization relied on its agents and sub-agents to collect payments from losing bettors and to make payments to winning bettors. Collections from and payments to bettors were made in Pennsylvania and elsewhere in the United States. The agents and sub-agents repeatedly forwarded money collected from losing bettors to leaders of the Mastronardo Bookmaking Organization. If certain agents and sub-agents could not make a complete payment to a winning bettor, the Mastronardo Bookmaking Organization would cover that payment. The financial relationship between the Mastronardo Bookmaking Organization and its agents and sub-agents varied.

        (g)     Members of the Mastronardo Bookmaking Organization communicated regularly with one another by telephone, by e-mail, by text message, by Skype, and in-person, to maintain the orderly operation of the sports betting and the orderly collection of gambling debt.

(h)     Members of the Mastronardo Bookmaking Organization met bettors in-person to collect and/or deliver payments for the sports bets.  These meetings often took place in public buildings and in public parking lots.  The payments often ranged from $1,000 to $20,000, but at times exceeded $100,000.

(i)     The Mastronardo Bookmaking Organization accepted payments from losing bettors in cash, in checks, and through wire payments.  The payments from losing bettors included bettors who lived in Pennsylvania and elsewhere in the United States.

(j)     The Mastronardo Bookmaking Organization made payments to winning bettors in cash.  The payments to winning bettors included bettors who lived in Pennsylvania and elsewhere in the United States.

(k)     The Mastronardo Bookmaking Organization used the Five Points Gulf Station, located at 298 Norristown Road, Blue Bell, Pennsylvania, as a means to collect and/or deliver payments for the sports bets.  Gambling payments were mailed to the Five Points Gulf Station by Federal Express and by other mail carriers.  Gambling payments were also dropped off at the Five Points Gulf Station.

(l)     Members of the Mastronardo Bookmaking Organization hid large sums of United States Currency in and around their residences.  Specially-built secret compartments were used to hide over $1,000,000 in the residence of defendant JOSEPH VITO MASTRONARDO, JR. in 2006, and over $400,000 in the residence of defendant JOHN MASTRONARDO in 2006.  PVC pipes were buried in a garden outside the residence of defendant JOSEPH VITO MASTRONARDO, JR. in 2010, and were used to hide over $1,100,000.

(m)     Members of the Mastronardo Bookmaking Organization kept money-

5

counting machines in their residences. Defendants JOSEPH VITO MASTRONARDO, JR.,

JOHN MASTRONARDO, and ERIC WOEHLCKE all had money-counting machines in their

residences in 2006 and again in 2010. These machines were used to quickly and accurately

count the large sums of United States Currency that were being collected. At its peak, the

Mastronardo Bookmaking Organization had over 1,000 bettors and was generating millions of

dollars of betting activity in a year.

      (n)    Members of the Mastronardo Bookmaking Organization worked shifts as

office employees, which consisted of the members answering telephones, speaking to bettors and

bookmakers, recording bets on the website that were communicated on the phone, and fixing

problems on the website.

      (o)    The Mastronardo Bookmaking Organization made efforts to hide the

bookmaking activities that were conducted in office locations. These efforts included moving

offices from one address to another, as well as using another person's name to register the phone

numbers and the utility bills associated with an office address.

      (p)    Members of the Mastronardo Bookmaking Organization provided

instructions to bettors on how to fill out checks that were used to pay sports bets. Bettors

followed those instructions, and made payments of their gambling debt with checks.

      (q)    Members of the Mastronado Bookmaking Organization provided

instructions on how to pay gambling debt through charitable contributions. A $10,000 charitable

contribution from a losing bettor could result in $10,000 being erased from the losing bettor's

gambling debt. Based on this quid pro quo, charitable contributions were made.

      (r)    Members of the Mastronardo Bookmaking Organization provided wire

6

instructions to bettors explaining that gambling debt could be paid by wiring money to off-shore bank accounts. The wiring instructions were often listed on a single typewritten page, and were faxed or e-mailed to the bettors. Bettors followed the instructions, and made wire payments of their gambling debt to off-shore bank accounts.

(s)     Members of the Mastronardo Bookmaking Organization laundered money that was collected from losing bettors in a variety of ways, to include the use of one or more check cashing agencies, private bank accounts, and international bank accounts. The laundering of money involves transferring money that was obtained through illegal conduct through a legitimate person or account so that the original source of the money cannot be traced.

(t)     Members of the Mastronardo Bookmaking Organization included numerous individuals in Costa Rica, who provided daily support for the orderly operation of the sports betting and the orderly collection of gambling debt. Members of the Mastronardo Bookmaking Organization residing in the United States regularly communicated with, and on occasion traveled to, Costa Rica to further these objectives.

## ROLES OF THE DEFENDANTS

5.     The defendants participated in the operation and management of the enterprise as follows:

(a)     Defendant JOSEPH VITO MASTRONARDO, JR. was the leader of the bookmaking organization. He supervised the agents and sub-agents who used the websites www.betroma.com and www.betrose.com. He supervised and paid the office employees who supported the websites. He laundered money in and outside the United States. He traveled in and outside of Pennsylvania to collect unlawful debts, and he directed others to travel in and

7

outside of Pennsylvania to collect unlawful debts.

(b)     Defendant JOHN MASTRONARDO was a leader of the bookmaking organization.  He supervised some of the agents and sub-agents who used the websites www.betroma.com and www.betrose.com.  He laundered money in and outside the United States.  He traveled in and outside of Pennsylvania to collect unlawful debts.

(c)     Defendant JOSEPH F. MASTRONARDO is the son of defendant JOSEPH VITO MASTRONARDO, JR.  He worked as an office employee to support the websites www.betroma.com and www.betrose.com.   He traveled in Pennsylvania to collect unlawful debts, and performed other financial matters relating to the bookmaking organization.

(d)     Defendant ERIC WOEHLCKE became a leader of the bookmaking organization.  He was initially a bookmaker and office employee who answered telephones and recorded bets on the websites www.betroma.com and www.betrose.com.  He also worked as an office manager for those websites.  He eventually supervised the agents and sub-agents using www.betrose.com, and he laundered money in and outside the United States.

(e)     Defendant HARRY MURRAY was a bookmaker who resided in Florida.  His bettors used the websites www.betroma.com and www.betrose.com.  He laundered money in and outside the United States, he traveled in Florida to collect unlawful debts, and he mailed gambling payments from Florida to Pennsylvania.

(f)     Defendant JOSEPH VITELLI owned the business J & A Check Cashing.  He assisted defendant JOSEPH VITO MASTRONARDO, JR., and the enterprise by providing an office directly above J & A Check Cashing.  That office was used for the illegal gambling business that was conducted on www.betroma.com.  He further assisted defendant JOSEPH

8

VITO MASTRONARDO, JR., and the enterprise by using J & A Check Cashing to launder money for the illegal gambling businesses on www.betroma.com and www.betrose.com.

(g)     Defendant ANNA ROSE VITELLI also owned the business J & A Check Cashing.  She assisted defendant JOSEPH VITO MASTRONARDO, JR., and the enterprise by providing an office directly above J & A Check Cashing.  That office was used for the illegal gambling business that was conducted on www.betroma.com.  She further assisted defendant JOSEPH VITO MASTRONARDO, JR., and the enterprise by using J & A Check Cashing to launder money for the illegal gambling businesses on www.betroma.com and www.betrose.com.

(h)     Defendant PATRICK TRONOSKI was a bookmaker who resided in Pennsylvania.  His bettors used the websites www.betroma.com and www.betrose.com.  He traveled in Pennsylvania to collect unlawful debt, and he frequently distributed money to defendant JOSEPH VITO MASTRONARDO, JR.

(i)     Defendant EDWARD FEIGHAN was a bookmaker who resided in Pennsylvania.  His bettors used the websites www.betroma.com and www.betrose.com.  He traveled in Pennsylvania to collect unlawful debt, and he distributed money to defendant JOHN MASTRONARDO.

(j)     Defendant KENNETH COHEN was a bookmaker who resided in Pennsylvania.  His bettors used the websites www.betroma.com and www.betrose.com.  He was also an office employee who answered telephones and recorded bets on the websites www.betroma.com and www.betrose.com.  He traveled in Pennsylvania to collect unlawful debt, and he laundered money in and outside the United States.

(k)     Defendant SCHUYLER TWADDLE was a bookmaker who resided in

9

Pennsylvania. He was also an office employee who answered telephones and recorded bets on the websites www.betroma.com and www.betrose.com. He traveled in Pennsylvania and collected unlawful debt.

    (l)  Defendant MIKE LOFTUS was a bookmaker who resided in Pennsylvania. He was also an office employee who answered telephones and recorded bets on the websites www.betroma.com and www.betrose.com. He traveled in Pennsylvania and collected unlawful debt.

    (m)  Defendant MIKE SQUILLANTE was a bookmaker who resided in Florida. He owned Business Travel Services, and he used that business to assist defendant JOSEPH VITO MASTRONARDO, JR., by laundering money for the illegal gambling business on www.betrose.com.

    (n)  Defendant DAVID ROUNICK was a bookmaker who resided in Pennsylvania. His bettors used the websites www.betroma.com and www.betrose.com.

    (o)  Defendant RONALD GENDRACHI was a bookmaker who resided in New Jersey. His bettors used the websites www.betroma.com and www.betrose.com.

**THE RACKETEERING CONSPIRACY**

    6.  From a time at least as early as on or about January 1, 2005, to on or about January 1, 2011, in Montgomery County, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JOSEPH VITO MASTRONARDO, JR.,**
**JOHN MASTRONARDO,**
**JOSEPH F. MASTRONARDO,**
**a/k/a "Joey,"**
**ERIC WOEHLCKE,**

10

**HARRY MURRAY,**
**JOSEPH VITELLI,**
**ANNA ROSE VITELLI,**
**PATRICK TRONOSKI,**
**EDWARD FEIGHAN,**
**KENNETH COHEN,**
**SCHUYLER TWADDLE,**
**MICHAEL LOFTUS,**
**MICHAEL SQUILLANTE,**
**DAVID ROUNICK, and**
**RONALD GENDRACHI,**

being persons employed by and associated with the Mastronardo Bookmaking Organization, and

others known and unknown to the grand jury, did unlawfully, willfully, and knowingly conspire

and agree together with each other and with others known and unknown to the grand jury, to

violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly

and indirectly, in the conduct of the affairs of the Mastronardo Bookmaking Organization, which

was engaged in and the activities of which affected interstate and foreign commerce through the

collection of unlawful debt, as set forth in paragraph 7 below, and through a pattern of

racketeering activity as set forth in paragraph 8 below.

       7.     The collection of unlawful debt, as that term is defined in Title 18, United

States Code, Section 1961(6), through which the defendants and their co-conspirators agreed to

conduct and participate, directly and indirectly, in the affairs of the Mastronardo Bookmaking

Organization, consisted of the collection of unlawful gambling debts, that is, debts incurred and

contracted in gambling activity that was in violation of the law of the United States and the law

of the State of Pennsylvania and which was incurred in connection with the business of gambling

in violation of the law of the United States and the law of the State of Pennsylvania.  It was part

of the conspiracy that each defendant agreed that a conspirator would commit at least one

collection of an unlawful debt in the conduct of the affairs of the Mastronardo Bookmaking Organization.

8.      The pattern of racketeering activity, as that term is defined in Title 18, United States Code, Section 1961(6), through which the defendants and their conspirators agreed to conduct and participate, directly and indirectly, in the affairs of the Mastronardo Bookmaking Organization, consisted of multiple acts indictable under:

       a.      Title 18, United States Code, Section 1955 (illegal gambling);

       b.      Title 18, United States Code, Section 1956 (money laundering);

       c.      Title 18, United States Code, Section 1952 (interstate travel in aid of racketeering); and

       d.      Title 18, United States Code, Section 1084 (transmitting wagering information);

and multiple acts involving illegal gambling, chargeable under Title 18, Pennsylvania Consolidated Statutes Annotated, Section 5514.

9.      It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Mastronardo Bookmaking Organization.

## **OVERT ACTS**

10.      In furtherance of the conspiracy, and to effect the objects and purposes thereof, the defendants, and others not named as defendants, committed various overt acts, including but not limited to the following:

       1)      On or about April 1, 2006, defendant JOHN MASTRONARDO

collected $36,000 that defendant EDWARD FEIGHAN left for him at the Inn at Towamencin,

1750 Sumneytown Pike, Kulpsville, Pennsylvania.

2)      On or about April 13, 2006, defendant JOSEPH VITO

MASTRONARDO, JR., spoke with defendant DAVID ROUNICK about the financial terms that

defendant ROUNICK could offer a sub-agent to re-join the Mastronardo Bookmaking

Organization.

3)      On or about April 15, 2006, defendant JOSEPH F.

MASTRONARDO collected $100,000 from a person on behalf of defendant JOSEPH VITO

MASTRONARDO, JR.

On or about April 19, 2006:

4)      Defendant HARRY MURRAY told defendant JOSEPH VITO

MASTRONARDO, JR., that he collected two $2,000 checks from a person that owed $12,000 to

defendant MURRAY.

5)      Defendant JOHN MASTRONARDO told defendant MIKE

SQUILLANTE that defendant JOSEPH VITO MASTRONARDO, JR., wanted to collect

$50,000 from defendant SQUILLANTE.

6)      Defendant JOSEPH VITO MASTRONARDO, JR., spoke to

defendant MIKE SQUILLANTE and arranged to collect $50,000 from defendant SQUILLANTE.

7)      Defendant JOSEPH VITO MASTRONARDO, JR., told defendant

MICHAEL LOFTUS to collect $12,000 from defendant JOSEPH VITO MASTRONARDO,

JR.'s home and to use that money to pay a gambling debt.

8)      On or about April 24, 2006, defendant KENNETH COHEN told

13

defendant JOSEPH VITO MASTRONARDO, JR., about a problem on the website with the betting line for the Dallas Mavericks basketball game, and how that problem was fixed.

        9)      On or about April 25, 2006, defendant ANNA ROSE VITELLI called defendant JOSEPH VITO MASTRONARDO, JR., at 3:03 a.m. and said to call her about something that "was important."

        On or about September 1, 2007:

        10)     Defendant JOSEPH VITO MASTRONARDO sent a letter to Montgomery County Probation Office to justify his frequent trips to Costa Rica, writing, "With regard to my travel to San Jose, Costa Rica, the weather there is perfect for my health, 82 degrees and HUMID every day.  I traveled at least fourteen times to San Jose last year, 2006, from August to January, leaving on Friday and returning on Monday . . . Betting is an integral part of my income, and in order to maintain that, San Jose is a legal venue for all types of gambling . . . by restricting my betting to Costa Rica and other offshore betting venues where betting is 100% legal, I will be allowed to make a living doing what I do best and love without being in violation of my probation."

        11)     Defendant JOSEPH VITO MASTRONARDO, JR., hired a person known to the grand jury (Person #1) to collect and deliver packages for defendant JOSEPH VITO MASTRONARDO, JR., which contained United States currency and/or checks that derived from the bookmaking activities of defendant JOSEPH VITO MASTRONARO, JR.

        12)     On or about January 26, 2010, Person #1 gave $7,100 to defendant JOSEPH F. MASTRONARDO on behalf of defendant JOSEPH VITO MASTRONARDO, JR.

        13)     On or about March 1, 2010, defendant EDWARD FEIGHAN met a

bettor known to the grand jury at Rosenberger Dairy at 847 Forty Foot Road, Hatfield Township, Pennsylvania, to settle a gambling debt.

14) On or about March 2, 2010, defendant JOSEPH VITO MASTRONARDO, JR., asked defendant JOHN MASTRONARDO to speak to a person known to the grand jury (Person #2) about paying $60,000 to defendant JOSEPH VITO MASTRONARDO, JR.

15) On or about March 3, 2010, defendant JOSEPH VITO MASTRONARDO, JR., spoke with defendant KENNETH COHEN about money that defendant COHEN owed him and finding new agents to earn that money, noting, "If you're not committed to the bookmaking business, like my son, then you have too much free time and you just get in trouble."

On or about March 4, 2010:

16) Defendant EDWARD FEIGHAN met a bettor known to the grand jury at a McDonalds on Route 222 in Allentown, Pennsylvania, to settle a gambling debt.

17) Defendant PATRICK TRONOSKI left money for defendant JOSEPH VITO MASTRONARDO, JR., at the the Five Points Gulf, 298 Norristown Road, Blue Bell, Pennsylvania.

18) Defendant JOSEPH VITO MASTRONARDO, JR., collected money at the Five Points Gulf, 298 Norristown Road, Blue Bell, Pennsylvania, that had been left for him by defendant PATRICK TRONOSKI.

19) On or about March 5, 2010, defendant EDWARD FEIGHAN met a bettor known to the grand jury at the Inn at Towamencin, 1750 Sumneytown Pike, Kulpsville,

15

Pennsylvania, to settle a gambling debt.

20)     On or about March 7, 2010, defendant JOSEPH VITO MASTRONARDO, JR., spoke to defendant HARRY MURRAY about how to properly handle player 1487, noting they didn't want to lose player 1487 as a customer and explaining that "he always calls you when he wants to send a wire."

21)     On or about March 8, 2010, defendant EDWARD FEIGHAN drove to 1732 Oregon Avenue, Philadelphia, Pennsylvania, and left $13,000 there to settle a gambling debt with a bettor known to the grand jury.

On or about March 9, 2010:

22)     Defendant SCHUYLER TWADDLE told defendant JOSEPH VITO MASTRONARDO, JR., that defendant TWADDLE collected $23,000 from a losing bettor unknown to the grand jury.

23)     Defendant JOSEPH VITO MASTRONARDO, JR., spoke with defendant JOHN MASTRONARDO about what he should do with a mobile tracking device that was found under defendant JOSEPH VITO MASTRONARDO, JR.'s car, asking, "The feds wouldn't do that, right?"

On or about March 11, 2010:

24)     Defendant JOHN MASTRONARDO collected $10,000 from Person #2 on behalf of defendant JOSEPH VITO MASTRONARDO, JR.

25)     Defendants JOSEPH VITO MASTRONARDO, JR., and ERIC WOEHLCKE discussed how defendant MIKE SQUILLANTE made payments with tickets, and how those ticket-payments should be accounted for.

16

On or about March 12, 2010:

26)     Defendant EDWARD FEIGHAN met a bettor known to the grand jury at the Inn of Towamencin, 1750 Sumneytown Pike, Kulpsville, Pennsylvania, to settle a gambling debt.

27)     Defendant JOSEPH VITO MASTRONARDO, JR., spoke with a person unknown to the grand jury about problems with collecting money that various bettors and agents owed defendant JOSEPH VITO MASTRONARDO, noting, "I don't wanna risk my website for this fucking stupid shit."

28)     On or about March 13, 2010, Person #1 drove to the home of defendant JOSEPH VITO MASTRONARDO, JR., and left $35,761 there for defendant JOSEPH VITO MASTRONARDO, JR.

On or about March 15, 2010:

29)     Defendant EDWARD FEIGHAN drove to 1732 Oregon Avenue, Philadelphia, Pennsylvania, and left $9,000 there to settle a gambling debt with a bettor known to the grand jury.

30)     Defendant JOSEPH VITO MASTRONARDO, JR., spoke with an agent unknown to the grand jury to assure him their business relationship was solid, telling the agent that defendant JOSEPH VITO MASTRONARDO had millions invested in Costa Rica, that he would not "rat" on people, that he loaned $2,000,000 to BETCRIS when R.S. [its owner] went to jail, and that, "I work in his building down there."

On or about March 18, 2010:

31)     Defendant PATRICK TRONOSKI left money for defendant

17

JOSEPH VITO MASTRONARDO, JR., at the Five Points Gulf, 298 Norristown Road, Blue Bell, Pennsylvania.

32)     Defendant JOSEPH VITO MASTRONARDO, JR., collected money at the Five Points Gulf, 298 Norristown Road, Blue Bell, Pennsylvania, that had been left for him by defendant PATRICK TRONOSKI.

33)     On or about March 20, 2010, defendant JOSEPH VITO MASTRONARDO, JR., instructed defendant MICHAEL LOFTUS on how to move the betting lines on various games.

On or about March 21, 2010:

34)     At the direction of defendant JOSEPH VITO MASTRONARDO, JR., defendant MICHAEL LOFTUS met an individual at the TD Bank, Philmont and Red Lion Roads, Philadelphia, Pennsylvania, and collected $40,050.

35)     Defendant JOSEPH VITO MASTRONARDO, JR., instructed defendant SCHUYLER TWADDLE on how to adjust the betting line on the West Virginia basketball game.

36)     On or about March 22, 2010, defendant ERIC WOEHLCKE spoke to an agent unknown to the grand jury who had money for defendant WOEHLCKE, and defendant WOEHLCKE instructed the agent, "Send it just to the, uhm, gas station . . . I'll tell them to expect it."

37)     On or about March 25, 2010, defendant ERIC WOEHCLKE asked defendant JOSEPH VITO MASTRONARDO, JR., if player 1487 could bet $20,000 on the Syracuse game.

18

On or about March 27, 2010:

38)     Defendant PATRICK TRONOSKI left money for defendant

JOSEPH VITO MASTRONARDO, JR., at the Five Points Gulf, 298 Norristown Road, Blue

Bell, Pennsylvania.

39)     Defendant JOSEPH VITO MASTRONARDO, JR., collected

money from the Five Points Gulf, 298 Norristown Road, Blue Bell, Pennsylvania, that had been

left for him by defendant PATRICK TRONOSKI.

40)     Defendants JOSEPH VITO MASTRONARDO, JR., and HARRY

MURRAY discussed the financial challenges faced by others, and defendant JOSEPH VITO

MASTRONARDO, JR., commented, "Well times like this I'm happy I'm a bookmaker," to

which defendant MURRAY responded, "Me too."

41)     Defendants ERIC WOEHCLKE and JOHN MASTRONARDO

discussed player 1487 betting $50,000 on the Kentucky basketball game with the approval of

defendant JOSEPH VITO MASTRONARDO, JR.

On or about March 28, 2010:

42)     Defendant ERIC WOEHLCKE told defendant JOHN

MASTRONARDO he had beaten player 1487 for $1,000,000 since he became a customer, and

joked with defendant JOHN MASTRONARDO that, "I just got a phone call from the West Palm

Beach Police that there's a man trying to jump off the fucking tower . . . there's a guy claiming

his number is 1487.  He's about to jump off a tower."

43)     Defendant ERIC WOEHLCKE told defendant JOSEPH VITO

MASTRONARDO, JR. that player 6173 won $61,000, and defendant JOSEPH VITO

19

MASTRONARDO said, "Well, we got to pay him, that's all."

44)     Defendant JOSEPH VITO MASTRONARDO, JR. told defendant HARRY MURRAY to send the checks to the Five Points Gulf, 298 Norristown Road, Blue Bell, Pennsylvania.

On or about March 29, 2010:

45)     Defendant JOHN MASTRONARDO spoke to defendant HARRY MURRAY about player 1487 sending $250,000 to cover his betting losses.

46)     Defendant JOHN MASTRONARDO spoke to defendant MIKE SQUILLANTE about how his players were doing with their bets.

47)     On a date between January 1, 2005, and March 31, 2010, defendant JOSEPH VITO MASTRONARDO, JR., gave $50,000 to Person # 2 and instructed that person to deliver the money to defendant HARRY MURRAY.

On or about November 17, 2010:

48)     Defendant JOSEPH VITO MASTRONARDO, JR. admitted under oath that he engaged in "anti-social behavior" while on probation, was found in violation of his probation, and was sentenced to 8 to 59 ½ months in prison.

49)     Defendant JOHN MASTRONARDO admitted under oath that he engaged in "anti-social behavior" while on probation, was found in violation of his probation, and was sentenced to 8 to 59 ½ months in prison.

50)     On or about an unknown date in December 2010, defendant JOSEPH VITO MASTRONARDO, JR., spoke to a bettor unknown to the grand jury on the telephone about payment of a $300,000 debt owed to the bettor, and subsequently caused two

unknown individuals to meet the bettor on the Pennsylvania Turnpike to pay $300,000 of United States Currency to that bettor.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about January 1, 2005, and continuously thereafter up to and including on or about January 1, 2011, in Montgomery County, in the Eastern District of Pennsylvania, and elsewhere defendants

**JOSEPH VITO MASTRONARDO, JR.,**
**JOHN MASTRONARDO,**
**JOSEPH F. MASTRONARDO,**
**a/k/a "Joey,"**
**ERIC WOEHLCKE,**
**HARRY MURRAY,**
**JOSEPH VITELLI,**
**ANNA ROSE VITELLI,**
**PATRICK TRONOSKI,**
**EDWARD FEIGHAN,**
**KENNETH COHEN,**
**SCHUYLER TWADDLE,**
**MICHAEL LOFTUS,**
**MICHAEL SQUILLANTE,**
**DAVID ROUNICK, and**
**RONALD GENDRACHI,**

and others known and unknown to the grand jury, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, that is, a gambling business involving sports betting, which operated in violation of the laws of the Commonwealth of Pennsylvania, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 5514, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of said illegal gambling business, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 in any single day.

22

In violation of Title 18, United States Code, Sections 1955 and 2.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.      From on or about June 1, 2005, through on or about April 30, 2010, in

Philadelphia County, in the Eastern District of Pennsylvania and elsewhere, defendants

**JOSEPH VITO MASTRONARDO, JR.,**
**JOHN MASTRONARDO,**
**JOSEPH F. MASTRONARDO,**
**a/k/a "Joey,"**
**ERIC WOEHLCKE,**
**HARRY MURRAY,**
**JOSEPH VITELLI,**
**ANNA ROSE VITELLI, and**
**RONALD GENDRACHI**

knowingly conspired and agreed with each other and with other persons known and unknown to

the grand jury to knowingly conduct and attempt to conduct financial transactions affecting

interstate commerce, which transactions involved the proceeds of specified unlawful activity, that

is, operating an illegal gambling business in violation of Title 18, United States Code, Section

1955, knowing that the transactions were designed in whole or in part to conceal and disguise the

nature, location, source, ownership, and control of the proceeds of the specified unlawful activity,

and that while conducting and attempting to conduct such financial transactions, knew that the

property involved in the financial transactions represented some form of unlawful activity, in

violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**MANNER AND MEANS**

       2.      Defendants JOSEPH VITELLI and ANNA ROSE VITELLI owned and

operated J & A Check Cashing, located at 2169 66th Avenue, Philadelphia, Pennsylvania.

       3.      Defendants JOSEPH VITELLI and ANNA ROSE VITELLI, separately

24

and together, cashed checks at J & A Check Cashing knowing the checks were payments of gambling debts that derived from an illegal gambling business conducted by defendant JOSEPH VITO MASTRONARDO, JR., and others known and unknown to the grand jury.

3.     Defendants JOSEPH VITO MASTRONARDO, JR.,, JOHN MASTRONARDO, HARRY MURRAY, and RONALD GENDRACHI accepted payments of gambling debt made with checks.

4.     Defendants JOSEPH VITO MASTRONARDO, JR., JOHN MASTRONARDO, HARRY MURRAY, and RONALD GENDRACHI instructed losing bettors on how to write the checks.

5.     Defendants JOSEPH VITO MASTRONARDO, JR., and JOSEPH F. MASTRONARDO collected United States Currency from J & A Check Cashing after the checks had been cashed.

6.     Defendant JOSEPH VITELLI called defendant JOSEPH VITO MASTRONARDO, JR., to tell him there was "mail" at J & A Check Cashing, meaning that United States Currency could be collected from the cashing of the checks.

7.     Defendants JOSEPH VITELLI and ANNA ROSE VITELLI earned a percentage of money from the checks they cashed at J & A Check Cashing.

8.     Defendants JOSEPH VITO MASTRONARO, JR., and ERIC WOEHLCKE made copies of the checks cashed at J & A Check Cashing as part of their record-keeping for the illegal gambling business.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object, the following overt

25

acts, among others, were performed in the Eastern District of Pennsylvania and elsewhere:

1.      On or about June 14, 2005, J & A Check Cashing cashed check number 10384, made payable to B.B. in the amount of $4,101, that was payment from a losing bettor on www.betroma.com to defendant JOSEPH VITO MASTRONARDO, JR.

2.      On or about September 30, 2005, J & A Check Cashing cashed check number 1566, made payable to M.G. in the amount of $2,300, that was payment from a losing bettor on www.betroma.com to defendant JOSEPH VITO MASTRONARDO, JR.

3.      On or about December 21, 2005, J & A Check Cashing cashed check number 819, made payable to R.G. in the amount of $1,200, that was payment from a losing bettor on www.betroma.com to defendant RONALD GENDRACHI.

4.      On or about April 7, 2006, defendant JOHN MASTRONARDO spoke to a person on the telephone and explained how gambling debt could be paid with checks made out in different amounts, and then cashed at defendant JOHN MASTRONARDO's friend's check cashing agency.

5.      On or about April 14, 2006, defendant JOSEPH VITO MASTRONARDO, JR., called an employee of J & A Check Cashing unknown to the grand jury and asked that employee to open the back door because he had "checks and papers."

On or about April 21, 2006:

6.      Defendant JOSEPH VITELLI called defendant JOSEPH VITO MASTRONARDO, JR., and told him he had envelopes and a bag he wanted to "get rid of."

7.      Defendant JOSEPH VITO MASTRONARDO, JR., called his father, said that defendant JOSEPH VITELLI had money, and asked his father to call defendant JOSEPH

26

VITELLI.

        8.     On or about August 21, 2006, J & A Check Cashing cashed check number 752, made payable to "Cash" in the amount of $4,450, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

        9.     On or about August 23, 2006, J & A Check Cashing cashed check number 753, made payable to "Cash" in the amount of $3,750, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

        10.     On or about September 6, 2006, J & A Check Cashing cashed check number 1771, made payable to L.C. in the amount of $4,961.78, that was payment from a losing bettor on www.betrose.com to defendant JOSEPH VITO MASTRONARDO, JR.

        11.     On or about November 28, 2006, J & A Check Cashing cashed check number 1917, made payable to J.S. in the amount of $1,987.67, that was payment from a losing bettor on www.betrose.com to defendant JOSEPH VITO MASTRONARDO, JR.

        12.     On or about November 30, 2006, J & A Check Cashing cashed check number 1002, made payable to T.H. in the amount of $8,479.22, that was payment from a losing bettor on www.betrose.com to defendant JOSEPH VITO MASTRONARDO, JR.

        13.     On or about December 5, 2006, J & A Check Cashing cashed check number 2003, made payable to F.B in the amount of $4,903.11, that was payment from a losing bettor on www.betrose.com to defendant JOSEPH VITO MASTRONARDO, JR.

        14.     On or about February 12, 2007, J & A Check Cashing cashed check number 3152, made payable to J.T. in the amount of $5,000, that was payment from a losing bettor on www.betrose.com.

On or about February 20, 2007:

15.     J & A Check Cashing cashed check number 121, made payable to R.G. in the amount of $1,940, that was payment from a losing bettor on www.betrose.com to defendant RONALD GENDRACHI.

16.     J & A Check Cashing cashed check number 122, made payable to R.G. in the amount of $1,902, that was payment from a losing bettor on www.betrose.com to defendant RONALD GENDRACHI.

17.     On or about March 26, 2007, J & A Check Cashing cashed check number 1773, made payable to T.N. in the amount of $4,605, that was payment from a losing bettor on www.betrose.com to defendant JOSEPH VITO MASTRONARDO, JR.

18.     On or about June 5, 2007, J & A Check Cashing cashed check number 1071, made payable to H.M. in the amount of $7,350, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

19.     On or about June 7, 2007, J & A Check Cashing cashed check number 1069, made payable to H.M. in the amount of $4,000, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

20.     On or about January 15, 2008, J & A Check Cashing cashed check number 1930, made payable to J.M. in the amount of $4,390, that was payment from a losing bettor on www.betrose.com to defendant JOSEPH VITO MASTRONARDO, JR.

21.     On or about February 27, 2008, J & A Check Cashing cashed check number 3980, made payable to "Cash" for the amount of $1,995, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

28

22.     On or about March 5, 2008, J & A Check Cashing cashed check number 947, made payable to H.M. in the amount of $1,000, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

On or about May 27, 2008:

23.     J & A Check Cashing cashed check number 1131, made payable to "Cash" in the amount of $1,992, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

24.     J & A Check Cashing cashed check number 1132, made payable to "Cash" in the amount of $1,993, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

25.     J & A Check Cashing cashed check number 1134, made payable to "Cash" in the amount of $1,995, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

26.     J & A Check Cashing cashed check number 1138, made payable to "Cash" in the amount of $1,999, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

On or about May 28, 2008:

27.     J & A Check Cashing cashed check number 1139, made payable to "Cash" in the amount of $1,995, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

28.     J & A Check Cashing cashed check number 1135, made payable to "Cash" in the amount of $1,996, that was payment from a losing bettor on www.betrose.com to

defendant HARRY MURRAY.

On or about May 29, 2008:

29.     J & A Check Cashing cashed check number 1133, made payable to "Cash" in the amount of $1,944, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

30.     J & A Check Cashing cashed check number 1137, made payable to "Cash" in the amount of $1,998, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

On or about May 30, 2008:

31.     J & A Check Cashing cashed check number 1130, made payable to "Cash" in the amount of $1,995, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

32.     J & A Check Cashing cashed check number 1136, made payable to "Cash" in the amount of $1,997, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

On or about September 15, 2008:

33.     J & A Check Cashing cashed check number 1003, made payable to S.R. in the amount of $4,125, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

34.     J & A Check Cashing cashed check number 1006, made payable to R.S. in the amount of $3,100, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

35.     On or about September 16, 2008, J & A Check Cashing cashed check number 1004, made payable to S.R. in the amount of $3,875, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

36.     On or about January 23, 2009, defendant ANNA ROSE VITELLI wrote a letter to defendant JOSEPH VITO MASTRONARDO, JR., explaining a problem with the cashing of checks at J & A Check Cashing.

37.     On or about November 27, 2009, J & A Check Cashing cashed check number 1310, made payable to C.M. in the amount of $4,991, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

38.     On or about March 1, 2010, defendant JOSEPH VITO MASTRONARDO, JR., told defendant ERIC WOEHLCKE that he took pictures of each check before dropping them off at "Joey's," and that defendant WOEHCLKE will see the checks as "AROE."

39.     On or about March 2, 2010, J & A Check Cashing cashed check number 1008, made payable to W.B. in the amount of $4,700, that was payment from a losing bettor on www.betrose.com to defendant HARRY MURRAY.

On or about March 3, 2010:

40.     J & A Check Cashing cashed check number 1009, made payable to S.F. in the amount of $3,650, that was payment from a losing bettor on www.betrose.com. to defendant HARRY MURRAY.

41.     J & A Check Cashing cashed check number 1010, made payable to S.J. for the amount of $2,000, that was payment from a losing bettor on www.betrose.com. to defendant HARRY MURRAY.

31

On or about March 5, 2010:

42.     Defendant JOSEPH VITELLI called defendant JOSEPH VITO MASTRONARDO, JR., and told him there was "mail" for him.

43.     Defendant JOSEPH VITO MASTRONARDO, JR., drove to and entered J & A Check Cashing.

44.     On or about March 10, 2010, defendant JOSEPH VITELLI called defendant JOSEPH VITO MASTRONARDO, JR., and told him there was "mail" for him.

On or about March 17, 2010:

45.     Defendant JOSEPH VITELLI called defendant JOSEPH VITO MASTRONARDO, JR., and told him there was "mail" for him.

46.     Defendant JOSEPH VITO MASTRONARDO, JR., drove to and entered J & A Check Cashing.

47.     Defendant JOSEPH VITO MASTRONARDO, JR., called defendant JOSEPH VITELLI and discussed checks he dropped off at J & A Check Cashing.

48.     On or about March 22, 2010, defendant JOSEPH VITELLI called defendant JOSEPH VITO MASTRONARDO, JR., and told him there was "mail" for him.

49.     On or about March 26, 2010, defendant JOSEPH F. MASTRONARDO spoke to defendant JOSEPH VITO MASTRONARDO, JR., and confirmed that he collected the "envelope" from defendant JOSEPH VITELLI.

50.     On or about March 28, 2010, defendant ANNA ROSE VITELLI spoke to defendant ERIC WOEHLCKE about giving all the check money to defendant JOSEPH F. MASTRONARDO, and asked why the sports figures have not been cleared up.

32

All in violation of Title 18, United States Code, Section 1956(h).

<u>**COUNT FOUR**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.     From on or about January 1, 2006, through in or about May 27, 2010, in

Montgomery County, in the Eastern District of Pennsylvania and elsewhere, defendants

**JOSEPH VITO MASTRONARDO, JR.,**
**JOHN MASTRONARDO,**
**ERIC WOEHLCKE,**
**HARRY MURRAY, and**
**KENNETH COHEN**

knowingly conspired and agreed with each other and with other persons known and unknown to

the grand jury to knowingly conduct and attempt to conduct financial transactions affecting

interstate commerce, which transactions involved the proceeds of specified unlawful activity, that

is, operating an illegal gambling business in violation of Title 18, United States Code, Section

1955, knowing that the transactions were designed in whole or in part to conceal and disguise the

nature, location, source, ownership, and control of the proceeds of the specified unlawful activity,

and that while conducting and attempting to conduct such financial transactions, knew that the

property involved in the financial transactions represented some form of unlawful activity, in

violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**MANNER AND MEANS**

       2.     Defendants JOSEPH VITO MASTRONARDO, JR., and JOHN

MASTRONARDO allowed losing bettors who used the websites www.betroma.com and

www.betrose.com to wire money from the United States to international bank accounts to pay

their gambling debts.

       3.     The collection of gambling debt from losing bettors was essential to the

34

success of www.betroma.com and www.betrose.com.

4.      Defendants JOSEPH VITO MASTRONARDO, JR., JOHN MASTRONARDO, ERIC WOEHLCKE, HARRY MURRAY, and KENNETH COHEN communicated with one another to verify the location where the money should be wired to, and to verify when the wire payment was received.

5.      Defendants JOSEPH VITO MASTRONARDO, JR., JOHN MASTRONARDO, ERIC WOEHLCKE, HARRY MURRAY, and KENNETH COHEN relied upon one another, or upon a person they designated, to contact the bettors and to provide the appropriate wire instructions.

6.      Defendant HARRY MURRAY used a fax machine to send instructions detailing where to wire the money to a bettor known to the grand jury.

7.      Defendant ERIC WOEHLCKE used e-mail and the telephone to give instructions detailing where to wire the money to a bettor known to the grand jury.

8.      Defendant JOSEPH VITO MASTRONARDO, JR., used e-mail to give Person # 2 typewritten instructions detailing where to wire the money, and Person # 2 shared the instructions with a bettor.

9.      Defendant JOHN MASTRONARDO used a fax machine to send instruction detailing where to wire the money to a bettor known to the grand jury.

10.      Defendant KENNETH COHEN gave written and verbal instructions to a bank employee about where to wire the money when defendant COHEN accompanied a bettor known to the grand jury to the bank.

11.      Money was wired from banks in the United States to banks in countries

35

that included, but were not limited to, Malta, Portugal, Sweden, and Antigua.

12.    Money was wired to foreign bank accounts that did not bear the names of defendants JOSEPH VITO MASTRONARDO, JR., JOHN MASTRONARDO, ERIC WOEHLCKE, HARRY MURRAY, or KENNY COHEN.

13.    Money was wired to foreign bank accounts that did bear the name of businesses that maintained accounts in the aforementioned foreign countries.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object, the following overt acts, among others, were performed in the Eastern District of Pennsylvania and elsewhere:

1.    On or about January 9, 2006, defendant JOHN MASTRONARDO caused a bettor known to the grand jury to wire $50,000 from the United States to a bank in Antigua with the beneficiary named as Investments Manager.

2.    On or about January 10, 2006, defendant JOHN MASTRONARDO caused a bettor known to the grand jury to wire $50,000 from the United States to a bank in Antigua with the beneficiary named as Investments Manager.

3.    On or about January 11, 2006, defendant JOHN MASTRONARDO caused a bettor known to the grand jury to $50,000 from the United States to a bank in Antigua with the beneficiary named as Investments Manager.

4.    On or about April 7, 2006, defendant JOHN MASTRONARDO told an individual that gambling debt can be paid outside the United States with a cashier's check made payable to "Investments Manager."

On or about April 20, 2006:

36

5.  Defendant JOSEPH VITO MASTRONARDO, JR., told defendant JOHN MASTRONARDO to use the name "Investments Manager SA."

6.  Defendant JOSEPH VITO MASTRONARDO, JR., told defendant JOHN MASTRONARDO they had to find other banks because defendant JOSEPH VITO MASTRONARDO, JR., was afraid of the gambling in the Carribean.

7.  On or about December 11, 2006, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $110,000 from the United States to a bank in Sweden with the beneficiary named as Investments Manager, S.A.

8.  On or about February 14, 2007, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $250,000 from the United States to a bank in Sweden with the beneficiary named as Suplitodo SA.

9.  On or about February 20, 2007, defendant JOHN MASTRONARDO caused a bettor known to the grand jury to wire $120,000 from the United States to a bank in Sweden with the beneficiary named as Suplitodo.

10.  On or about March 14, 2007, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $258,000 from the United States to a bank in Sweden with the beneficiary named as Suplitodo SA.

11.  On or about April 23, 2007, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $270,000 from the United States to a bank in Sweden with the beneficiary named as Suplitodo SA.

12  On or about June 21, 2007, defendant JOHN MASTRONARDO caused a bettor unknown to the grand jury to wire $40,000 from the United States to a bank in Sweden

37

with the beneficiary named as Suplitodo SA.

13.     On or about September 7, 2007, defendant JOHN MASTRONARDO caused a bettor known to the grand jury to wire $141,880 from the United States to a bank in Sweden with the beneficiary named as Investments Manager.

14.     On or about September 17, 2007, defendant KENNETH COHEN caused a bettor known to the grand jury to wire $150,000 from the United States to a bank in Sweden with the beneficiary named as Investments Manager, S.A.

15.     On or about November 28, 2007, defendant JOHN MASTRONARDO caused a bettor known to the grand jury to wire $175,000 from the United States to a bank in Sweden with the beneficiary named as Investments Manager.

16.     On or about February 5, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $175,000 from the United States to a bank in Sweden with the beneficiary named as Suplitodo SA.

17.     On or about March 20, 2008, defendant HARRY MURRAY caused a bettor known to the grand jury to wire $44,333 from the United States to a bank in Malta with the beneficiary named as Investments Manager SA.

18.     On or about April 7, 2008, defendant KENNETH COHEN caused a bettor known to the grand jury to wire $47,000 from the United States to a bank in Malta with the beneficiary named as Investments Manager, S.A.

19.     On or about April 16, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $90,127.68 from the United States to a bank in Malta with the beneficiary named as Investments Manager, S.A.

20.    On or about June 10, 2008, defendant JOHN MASTRONARDO caused a bettor unknown to the grand jury to wire $110,000 from the United States to a bank in Sweden with the beneficiary named as Suplitodo SA.

21.    On or about August 12, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $50,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

22.    On or about August 18, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $35,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

23.    On or about August 26, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $30,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

24.    On or about September 4, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $25,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

25.    On or about September 17, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $25,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

26.    On or about September 18, 2008, defendant HARRY MURRAY caused a bettor known to the grand jury to wire $110,00 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

27.    On or about October 1, 2008, defendant JOSEPH VITO

MASTRONARDO, JR., caused a bettor known to the grand jury to wire $25,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

28.     On or about October 20, 2008, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $50,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo Media, Ltd.

29.     On or about January 13, 2009, defendant HARRY MURRAY caused a bettor known to the grand jury to wire $150,000 from the United States to a bank in Portugal with the beneficiary named as Suplitodo S.A.

30.     On or about January 14, 2009, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $25,000 from the United States to a bank in Malta with the beneficiary named as Suplitodo SA.

31.     On or about February 2, 2009, defendant JOSEPH VITO MASTRONARDO, JR., caused a bettor known to the grand jury to wire $75,000 from the United States to a bank in Portugal with the beneficiary named as Suplitodo SA.

32.     On or about December 29, 2009, defendant HARRY MURRAY caused a bettor known to the grand jury to wire $150,000 from the United States to a bank in Portugal with the beneficiary named as Suplitodo S.A.

33.     On or about February 9, 2010, defendant HARRY MURRAY caused a bettor known to the grand jury to wire $100,00 from the United States to a bank in Portugal with the beneficiary named as Suplitodo S.A.

34.     On or about March 7, 2010, defendant JOSEPH VITO MASTRONARDO, JR., told defendant HARRY MURRAY to leave player 1487 alone because player 1487 would

call when he wanted to send a wire payment.

35.     On or about March 12, 2010, defendant HARRY MURRAY told defendant JOSEPH VITO MASTRONARDO, JR., that "Rico" wired $13,900, but they could not locate the money.

36.     On or about March 15, 2010, defendant ERIC WOEHLCKE and JOSEPH VITO MASTRONARDO, JR., discussed the fact that "Rico's" wire had not arrived.

37.     On or about March 21, 2010, defendant JOHN MASTRONARDO spoke to a person about player 1487 sending a wire payment, and instructed that person to contact defendant HARRY MURRAY for the wire instructions.

38.     On or about March 22, 2010, defendant JOSEPH VITO MASTRONARDO, JR., told defendant HARRY MURRAY that three wires from defendant MURRAY's players came in last week.

On or about March 23, 2010:

39.     Defendant ERIC WOEHLCKE spoke to player 6173 and gave player 6173 the address for "Investments Manager SA" to assist in a wire transfer.

40.     Defendant ERIC WOEHLCKE caused a bettor known to the grand jury to wire $74,400 from the United States to a bank in Malta with the beneficiary named as Investments Manager, S.A.

41.     Defendant ERIC WOEHLCKE spoke to defendant JOHN MASTRONARDO and confirmed that he gave player 6173 the wire information, and that defendant JOSEPH VITO MASTRONARDO, JR., was allowing player 6173 to bet again.

42.     On or about March 26, 2010, defendant ERIC WOEHLCKE told

41

defendant JOSEPH VITO MASTRONARDO, JR., that the wire from player 6173 had come in, but had not been put in defendant JOSEPH VITO MASTRONARDO, JR.'s account.

43.    On or about March 29, 2010, defendant JOHN MASTRONARDO told defendant ERIC WOEHLCKE that player 1487 would wire $200,000, would pay defendant HARRY MURRAY $50,000 in cash, and those payments would cover the $354,000 of gambling debt owed by player 1487.

44.    On or about April 7, 2010, defendant HARRY MURRAY caused a bettor known to the grand jury to wire $200,000 from the United States to a bank in Portugal with the beneficiary named as Suplitodo S.A.

45.    On or about May 27, 2010, defendant ERIC WOEHLCKE caused a bettor known to the grand jury to wire $40,950 from the United States to a bank in Malta with the beneficiary named as Investments Manager, S.A.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     From a time at least as early as on or about September 1, 2009, to on or about April 30, 2010, in Montgomery County, in the Eastern District of Pennsylvania and elsewhere, defendant

### JOSEPH VITO MASTRONARDO, JR.

knowingly conspired and agreed with Person #1 to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is, operating an illegal gambling business in violation of 18 U.S.C. § 1955, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### MANNER AND MEANS

2.     Defendant JOSEPH VITO MASTRONARDO, JR., hired Person #1 to work for him, and instructed Person #1 where to go and what to do.

3.     Defendant JOSEPH VITO MASTRONARDO, JR., gave Person #1 checks that Person #1 was to deposit into Person #1's bank account.

4.     None of the checks defendant JOSEPH VITO MASTRONARDO, JR., gave to Person #1 were made payable to defendant JOSEPH VITO MASTRONARDO, JR.

5.     Person #1 nonetheless knew the checks that defendant JOSEPH VITO

43

MASTRONARDO, JR., gave him were payments of gambling debt owed to defendant JOSEPH

VITO MASTRONARDO, JR.

      6.     Person #1 deposited the checks into his bank account.

      7.     After depositing the checks, Person #1 withdrew a corresponding amount

of United States Currency and gave that United States Currency to defendant JOSEPH VITO

MASTRONARDO, JR..

## OVERT ACTS

      In furtherance of the conspiracy, and to accomplish its object, the following overt

acts, among others, were performed in the Eastern District of Pennsylvania and elsewhere:

      1.     On or about December 12, 2009, Person #1 deposited check number 2736,

in the amount of $8,250, into his bank account.

      2.     On or about December 18, 2009, Person #1 deposited check number 2737,

in the amount of $5,000, into his bank account.

      On or about December 22, 2009:

      3.     Person #1 withdrew $9,250 of United States Currency from his bank

account.

      4.     Person #1 gave defendant JOSEPH VITO MASTRONARDO, JR., $9,250

of United States Currency.

      5.     On or about December 28, 2009, Person #1 deposited check number 1308,

in the amount of $4,995, into his bank account.

      On or about January 11, 2010:

      6.     Person #1 deposited check number 2039, in the amount of $1,800, into his

bank account.

       7.      Person #1 deposited check number 1323, in the amount of $2,300, into his bank account.

       On or about January 13, 2010:

       8.      Person #1 withdrew $3,000 of United States Currency from his bank account.

       9.      Person #1 gave defendant JOSEPH VITO MASTRONARDO, JR., $3,000 of United States Currency.

       On or about March 16, 2010:

       10.      Person #1 deposited check number 314, in the amount of $1,000, into his bank account.

       11.      Person #1 deposited check number 459, in the amount of $2,000, into his bank account.

       12.      Person #1 deposited check number 1005, in the amount of $500, into his bank account.

       13.      Person #1 withdrew $3,500 of United States Currency from his bank account.

       14.      Person #1 gave defendant JOSEPH VITO MASTRONARDO, JR., $3,500 of United States Currency.

       All in violation of Title 18, United States Code, Section 1956(h).

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       From a time at least as early as on or about January 1, 2009, to on or about April 30, 2010, in Montgomery County, in the Eastern District of Pennsylvania and elsewhere, defendants

**JOSEPH VITO MASTRONARDO, JR.,**
**JOHN MASTRONARDO,**
**ERIC WOEHLCKE,**
**HARRY MURRAY, and**
**MIKE SQUILLANTE**

knowingly conspired and agreed with each other and with persons known and unknown to the grand jury to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is, operating an illegal gambling business in violation of 18 U.S.C. § 1955, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNER AND MEANS

2.       Defendants JOSEPH VITO MASTRONARDO JR. and JOHN MASTRONARDO knew that defendant MIKE SQUILLANTE owned and operated Business Travel Services (BTS) and www.lantetickets.com (LT) in Pompano Beach, Florida.

3.       Defendant MIKE SQUILLANTE had the legal authority to deposit and

withdraw funds from the bank accounts associated with BTS and LT.

       4.      Defendants JOSEPH VITO MASTRONARDO, JR., JOHN MASTRONARDO, ERIC WOEHLCKE, and HARRY MURRAY had access to checks that losing sports bettors sent to pay their gambling debts on www.betrose.com.

       5.      Defendants JOSEPH VITO MASTRONARDO, JR., JOHN MASTRONARDO, ERIC WOEHLCKE, and HARRY MURRAY forwarded checks from losing bettors on www.betrose.com to defendant MIKE SQUILLANTE so those checks could be deposited into a BTS bank account.

       6.      Defendant HARRY MURRAY instructed losing bettors to make checks payable to "BTS" or to leave the payee section blank.

       7.      Defendant MIKE SQUILLANTE repaid JOSEPH VITO MASTRONARDO, JR., for the checks that were deposited into the BTS account.

## OVERT ACTS

       In furtherance of the conspiracy, and to accomplish its object, the following overt acts, among others, were performed in the Eastern District of Pennsylvania and elsewhere:

       1.      On or about January 15, 2009, check number 1176, which was made payable to "Cash" in the amount of $1,900, was deposited into the account of BTS.

       2.      On or about January 19, 2009, check number 5851, which was made payable to H.M. in the amount of $7,498, was deposited into the account of BTS.

       On or about February 13, 2009:

       3.      Check number 1080, which was made payable to "Cash" in the amount of $4,980, was deposited into the account of BTS.

4.      Check number 1081, which was made payable to "Cash" in the amount of $4,990, was deposited into the account of BTS.

5.      Check number 1082, which was made payble to "Cash" in the amount of $4,970, was deposited into the account of BTS.

6.      Check number 1083, which was made payable to "Cash" in the amount of $4,960, was deposited into the account of BTS.

7.      On or about September 21, 2009, check number 247, which was made payable to B.T.S. in the amount of $2,000, was deposited into the account of BTS.

8.      On or about November 21, 2009, check number 254, which was payable to B.T.S. in the amount of $1,000, was deposited into the account of BTS.

On or about December 2, 2009:

9.      Check number 1307, which was made payable to B.T.S. in the amount of $4,990, was deposited into the account of BTS.

10.      Check number 1309, which was made payable to B.T.S. in the amount of $4,990, was deposited into the account of BTS.

11.      Check number 1311, which was made payable to B.T.S. in the amount of $4,992, was deposited into the account of BTS.

12.      On March 11, 2010, defendants JOSEPH VITO MASTRONARDO, JR., and ERIC WOEHLCKE discussed how defendant MIKE SQUILLANTE was paying in tickets, and how the payments should be recorded.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS SEVEN through FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

          1.     On or about the dates listed below, in Montgomery County, in the Eastern District of Pennsylvania, and elsewhere, defendant

### JOSEPH VITO MASTRONARO JR.

traveled in interstate commerce, aided and abetted, and wilfully caused the travel of others in interstate commerce, from Pennsylvania to locations outside Pennsylvania as detailed below, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, that is, an illegal gambling business, in violation of Title 18, United States Code, Section 1955 and Title 18, Pennsylvania Consolidated. Statutes Annotated, Section 5514, and thereafter performed and attempted to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the illegal gambling business (each trip constituting a separate count):

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 7 | December 7, 2009 | Aided and abetted trip to New Jersey to settle gambling debt. |
| 8 | December 15, 2009 | Aided and abetted trip to New Jersey to settle gambling debt. |
| 9 | December 21, 2009 | Aided and abetted trip to New Jersey to settle gambling debt. |
| 10 | January 11, 2010 | Aided and abetted trip to New Jersey to settle gambling debt. |
| 11 | January 18, 2010 | Aided and abetted trip to New Jersey to settle gambling debt. |

| 12 | January 27, 2010 | Aided and abetted trip to New Jersey to settle gambling debt. |
| 13 | February 15, 2010 | Aided and abetted trip to New Jersey to settle gambling debt. |
| 14 | February 24, 2010 | Aided and abetted trip to New Jersey to settle gambling debt. |

All in violation of Title 18, United States Code, Sections 1952 and 2.

## COUNT FIFTEEN through TWENTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     On or about each of the dates listed below, in Montgomery County, in the Eastern District of Pennsylvania, and elsewhere, defendants

### JOSEPH VITO MASTRONARDO JR.,
### JOHN MASTRONARDO, and
### ERIC WOEHLCKE,

being engaged in the business of betting and wagering, knowingly used, aided and abetted the use of, and wilfully caused the use of a wire communication facility for the transmission in interstate and foreign commerce, between the Commonwealth of Pennsylvania and others states or countries, of bets and wagers and information assisting in the placing of bets and wagers on a sporting event and contest, and for the transmission of a wire communication which entitled the recipient to receive money and credit as a result of bets and wagers and for information assisting in the placing of bets and wagers on a sporting event and contest (each call constituting a separate count):

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 15 | March 1, 2010 | Defendant JOSEPH VITO MASTRONARDO, JR., called telephone number 1-800-942-1472 and requested the transfer of $61,000 to "Player 184." |
| 16 | March 16, 2010 | Defendant ERIC WOEHLCKE called 1-866-402-8835, asked for OSCAR LNU, spoke to MIKE LNU, and requested an agent transfer to 8102, reducing 8102s figure by $500. |
| 17 | March 18, 2010 | Defendant ERIC WOEHLCKE called 1-202-309-0734 to report that he just raised a bettor's limit to $10,000. |
| 18 | March 20, 2010 | Defendant ERIC WOEHCLKE called 1-866-402-8835 and spoke to OSCAR LNU twice, deleting a wager under 954, |

and then raising credit limit for 954 from $3,000 to $5,000.

| 19 | March 21, 2010 | Defendant JOHN MASTRONARDO called 1-202-309-0734 to report that a bettor could no longer bet until he paid his gambling debt. |
| 20 | March 25, 2010 | Defendant ERIC WOEHLCKE called 1-866-402-8835 and spoke to OSCAR LNU, raised the betting limit for player 1487 to $15,000 and then bet on behalf of player 1487. |
| 21 | March 29, 2010 | Defendant JOHN MASTRONARDO called 1-561-926-9755 and spoke to HARRY MURRAY about how much money bettor 1487 would pay. |
| 22 | March 29, 2010 | Defendant ERIC WOEHLCKE called 1-800-942-1470 and spoke to DREW LNU, arranged a money drop off to pay a bettor in Chicago for a total of $58,000. |

All in violation of Title 18, United States Code, Sections 1084(a) and 2.

## COUNT TWENTY-THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

From September 7, 2007, through September 5, 2008, in the Eastern District of

Pennsylvania, defendants

### JOSEPH VITO MASTRONARDO JR.,
### JOSEPH F. MASTRONARDO,
### a/k/a "Joey," and
### JOANNA MASTRONARDO,

for the purpose of evading the reporting requirements of Title 31, United States Code, Section

5313(a) and the regulations promulgated thereunder, knowingly caused and attempted to cause a

domestic financial institution to fail to file Currency Transaction Reports ("CTR") for currency

transactions in excess of $10,000, by making multiple cash deposits on the same day in amounts

less than $10,000, when in their aggregate these deposits exceeded $10,000, including, as part of

a pattern of illegal activity involving transactions of more than $100,000, that is, approximately

72 transactions totaling over $500,000, in a twelve-month period.

In violation of Title 31, United States Code, Sections 5324(a)(1) and (d)(2).

53

## NOTICE OF FORFEITURE NO. 1

### (RACKETEERING FORFEITURE)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Section

1962(d) set forth in Count One of this indictment, defendants

**JOSEPH VITO MASTRONARDO, JR.**
**JOHN MASTRONARDO**
**JOSEPH F. MASTRONARDO,**
**a/k/a "Joey"**
**ERIC WOEHLCKE**
**HARRY MURRAY**
**JOSEPH VITELLI**
**ANNA ROSE VITELLI**
**PATRICK TRONOSKI**
**EDWARD FEIGHAN**
**KENNY COHEN**
**SCHUYLER TWADDLE**
**MICHAEL LOFTUS**
**MICHAEL SQUILLANTE**
**DAVID ROUNICK, and**
**RONALD GENDRACHI**

shall forfeit to the United States of America:

(a)     any interest acquired or maintained in violation of section 1962,

including, but not limited to, the sum of $6,315,984.68, for which defendants are jointly and

severally liable, and:

1)   $180,810 US currency seized from safe at 1671 Stocton Dr on March 31, 2010
2)   $182 US currency in envelope seized from 1671 Stocton Dr on March 31, 2010
3)   $2,979 US currency seized from 1671 Stocton Dr on March 31, 2010
4)   $3,000 US currency seized from 1671 Stocton Dr on March 31, 2010
5)   $1,120,300 US currency in sealed shrunk plastic bags

stored inside PVC capped cleanout drain buried in yard
seized from 1671 Stocton Dr on March 31, 2010

6) $180,492.78 seized on April 2, 2010 from Vist Financial,
formerly known as Madison Bank, account #4015304,
titled in the name of Joseph and Joanna Mastronardo

7) $162,565 seized on April 2, 2010 from Vist Financial,
formerly known as Madison Bank, account #4072987,
titled in the name of Joseph and Joanna Mastronardo

8) $205,180.95 seized on April 2, 2010 from Vist Financial,
formerly known as Madison Bank, account #7096348,
titled in the name of Joseph and Joanna Mastronardo

9) $1,191,536.43 seized on April 2, 2010 from Vist Financial,
formerly known as Madison Bank, account #5008417,
titled in the name of Joanna Mastronardo

10) $2,248.38 seized on April 2, 2010 from Vist Financial,
formerly known as Madison Bank, account #1006959,
titled to Mastronardo Builders

11) $2,377.12 seized on April 2, 2010 from Vist Financial,
formerly known as Madison bank, account #4074882, titled
to Joseph Mastronardo

12) $2,444.14 seized on April 3, 2010 from Vist Financial,
formerly known as Madison Bank, account #1038656,
titled to International Consultants

13) Investments valued at $85,000 held in Morgan Keegan
account #31146277, titled to Joanna Mastronardo

14) Investments valued at $250,000 held in Morgan Keegan
account #31413206, titled to Joanna and Joseph F.
Mastronardo

15) $57,200 US currency seized from 320 Plaza Real on March
31, 2010

16) $4,800 US currency seized from 777 W. Germantown Pk
on March 31, 2010

17) $548 US currency seized from John Mastronardo's pocket
on March 31, 2010

18) $743.85 seized on April 2, 2010 from Madison Bank/Vist
Financial account #4089073, titled to John & Mary
Mastronardo

19) $114,000 US currency seized from Intervault Box #4175 on
March 31, 2010 titled to Harry Murray

20) $20,000 US currency seized from Intervault Box #3113 on
March 31, 2010 titled to Harry Murray

21) $261,600 US currency seized from Wachovia Box #4664
on March 31, 2010 titled to Harry Murray

22) $7,427 US currency seized from 6618 Patio Lane on March

31, 2010

23) $6,190 US currency seized from men's pants pocket in 2nd floor bedroom at 3708 Academy Road on March 31, 2010

24) $10,000 US currency seized from green Citizens Bank envelope in 2nd floor bedroom closet at 3708 Academy Road on March 31, 2010

25) $2,048 US currency seized from 108 Continental Drive on March 31, 2010

26) $326 US currency seized from 108 Continental Drive on March 31, 2010

27) $13,000 US currency in white safe seized from master bedroom closet of 1732 Oregon Ave on March 31, 2010

28) All funds on deposit in TD Bank account #IM-0368013769, titled to Schuyler Twaddle

29) $200 US currency seized from master bedroom dresser at 9544 James St on March 31, 2010

30) $1,900 US currency seized from master bedroom desk at 9544 James St on March 31, 2010;

(b) any interest in; security of; claim against; or property or contractual right of any kind affording a source of influence over any enterprise established, operated, controlled, conducted, or participated in the conduct of, such violation, including, but not limited to:

1) 2002 Cadillac Deville, Pa tag ECV-3684, registered to Joanna Mastronardo, seized from 298 Norristown Road on March 31, 2010

2) 1671 Stocton Drive, Meadowbrook, PA, titled to Joanna E. Mastronardo

3) 2007 Lexus, PA tag HHB-2120, registered to John Vito Mastronardo seized on March 31, 2010

4) 2004 Chevrolet Suburban, PA tag FVT-8851, titled to John V. Mastronardo

5) 2001 Cadillac Deville, PA tag GKD2751, titled to John Mastronardo seized on March 31, 2010

5) 6 Devonshires Court, Blue Bell, PA, titled to John V. & Mary Angela Mastronardo

6) 2169 66th Ave, Philadelphia, PA, titled to Joseph & Anna Rose Vitelli

7) 6618 Patio Lane, Boca Raton, FL, titled to Harry D. Murray, Jr.

56

8)     2009 Nissan Armada, PA tag GBP-3414, registered to Edward J. Feighan seized on March 31, 2010

9)     2007 Cadillac Escalade, PA tag GLV-2244, titled to Patrick Tronoski;

(c)     any property constituting, or derived from, any proceeds obtained,

directly or indirectly, from such violation, including, but not limited to, the sum of

$6,315,984.68, for which defendants are jointly and severally liable, and

1)     $180,810 US currency seized from safe at 1671 Stocton Dr on March 31, 2010

2)     $182 US currency in envelope seized from 1671 Stocton Dr on March 31, 2010

3)     $2,979 US currency seized from 1671 Stocton Dr on March 31, 2010

4)     $3,000 US currency seized from 1671 Stocton Dr on March 31, 2010

5)     $1,120,300 US currency in sealed shrunk plastic bags stored inside PVC capped cleanout drain buried in yard seized from 1671 Stocton Dr on March 31, 2010

6)     $180,492.78 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #4015304, titled in the name of Joseph and Joanna Mastronardo

7)     $162,565 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #4072987, titled in the name of Joseph and Joanna Mastronardo

8)     $205,180.95 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #7096348, titled in the name of Joseph and Joanna Mastronardo

9)     $1,191,536.43 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #5008417, titled in the name of Joanna Mastronardo

10)     $2,248.38 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #1006959, titled to Mastronardo Builders

11)     $2,377.12 seized on April 2, 2010 from Vist Financial, formerly known as Madison bank, account #4074882, titled to Joseph Mastronardo

12)     $2,444.14 seized on April 3, 2010 from Vist Financial, formerly known as Madison Bank, account #1038656, titled to International Consultants

13)     Investments valued at $85,000 held in Morgan Keegan

account #31146277, titled to Joanna Mastronardo

14) Investments valued at $250,000 held in Morgan Keegan account #31413206, titled to Joanna and Joseph F. Mastronardo

15) $57,200 US currency seized from 320 Plaza Real on March 31, 2010

16) $4,800 US currency seized from 777 W. Germantown Pk on March 31, 2010

17) $548 US currency seized from John Mastronardo's pocket on March 31, 2010

18) $743.85 seized on April 2, 2010 from Madison Bank/Vist Financial account #4089073, titled to John & Mary Mastronardo

19) $114,000 US currency seized from Intervault Box #4175 on March 31, 2010 titled to Harry Murray

20) $20,000 US currency seized from Intervault Box #3113 on March 31, 2010 titled to Harry Murray

21) $261,600 US currency seized from Wachovia Box #4664 on March 31, 2010 titled to Harry Murray

22) $7,427 US currency seized from 6618 Patio Lane on March 31, 2010

23) $6,190 US currency seized from men's pants pocket in 2nd floor bedroom at 3708 Academy Road on March 31, 2010

24) $10,000 US currency seized from green Citizens Bank envelope in 2nd floor bedroom closet at 3708 Academy Road on March 31, 2010

25) $2,048 US currency seized from 108 Continental Drive on March 31, 2010

26) $326 US currency seized from 108 Continental Drive on March 31, 2010

27) $13,000 US currency in white safe seized from master bedroom closet of 1732 Oregon Ave on March 31, 2010

28) All funds on deposit in TD Bank account #IM-0368013769, titled to Schuyler Twaddle

29) $200 US currency seized from master bedroom dresser at 9544 James St on March 31, 2010

30) $1,900 US currency seized from master bedroom desk at 9544 James St on March 31, 2010;

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture, including, but not limited to:

1)    1626 Sylvan Dr, Blue Bell, PA, titled to Patrick & Jennifer Tronoski

All pursuant to Title 18, United States Code, Section 1963.

## NOTICE OF FORFEITURE NO. 2

### (GAMBLING FORFEITURE)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Section 1955

set forth in Count Two of this indictment, defendants

**JOSEPH VITO MASTRONARDO, JR.**
**JOHN MASTRONARDO**
**JOSEPH F. MASTRONARDO,**
**a/k/a "Joey"**
**ERIC WOEHLCKE**
**HARRY MURRAY**
**JOSEPH VITELLI**
**ANNA ROSE VITELLI**
**PATRICK TRONOSKI**
**EDWARD FEIGHAN**
**KENNY COHEN**
**SCHUYLER TWADDLE**
**MICHAEL LOFTUS**
**MICHAEL SQUILLANTE**
**DAVID ROUNICK, and**
**RONALD GENDRACHI**

shall forfeit to the United States of America:

    a.      any property, real or personal, which constitutes or is derived from

            proceeds traceable to a violation of any offense constituting

            "specified unlawful activity," and

    b.      any property, including money, used in violation of the provisions

            of Section 1955 of Title 18, United States Code,

including, but not limited to the sum of $6,315,984.68 United States currency, and:

            1)      $180,810 US currency seized from safe at 1671 Stocton Dr
                    on March 31, 2010
            2)      $182 US currency in envelope seized from 1671 Stocton Dr

60

on March 31, 2010

3) $2,979 US currency seized from 1671 Stocton Dr on March 31, 2010

4) $3,000 US currency seized from 1671 Stocton Dr on March 31, 2010

5) $1,120,300 US currency in sealed shrunk plastic bags stored inside PVC capped cleanout drain buried in yard seized from 1671 Stocton Dr on March 31, 2010

6) $180,492.78 seized  on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #4015304, titled in the name of Joseph and Joanna Mastronardo

7) $162,565 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #4072987, titled in the name of Joseph and Joanna Mastronardo

8) $205,180.95 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #7096348, titled in the name of Joseph and Joanna Mastronardo

9) $1,191,536.43 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #5008417, titled in the name of Joanna Mastronardo

10) $2,248.38 seized on April 2, 2010 from Vist Financial, formerly known as Madison Bank, account #1006959, titled to Mastronardo Builders

11) $2,377.12 seized on April 2, 2010 from Vist Financial, formerly known as Madison bank, account #4074882, titled to Joseph Mastronardo

12) $2,444.14 seized on April 3, 2010 from Vist Financial, formerly known as Madison Bank, account #1038656, titled to International Consultants

13) Investments valued at $85,000 held in Morgan Keegan account #31146277, titled to Joanna Mastronardo

14) Investments valued at $250,000 held in Morgan Keegan account #31413206, titled to Joanna and Joseph F. Mastronardo

15) $57,200 US currency seized from 320 Plaza Real on March 31, 2010

16) $4,800 US currency seized from 777 W. Germantown Pk on March 31, 2010

17) $548 US currency seized from John Mastronardo's pocket on March 31, 2010

18) $743.85 seized on April 2, 2010 from Madison Bank/Vist Financial account #4089073, titled to John & Mary Mastronardo

19) $114,000 US currency seized from Intervault Box #4175 on

61

March 31, 2010 titled to Harry Murray

20) $20,000 US currency seized from Intervault Box #3113 on March 31, 2010 titled to Harry Murray

21) $261,600 US currency seized from Wachovia Box #4664 on March 31, 2010 titled to Harry Murray

22) $7,427 US currency seized from 6618 Patio Lane on March 31, 2010

23) $6,190 US currency seized from men's pants pocket in 2nd floor bedroom at 3708 Academy Road on March 31, 2010

24) $10,000 US currency seized from green Citizens Bank envelope in 2nd floor bedroom closet at 3708 Academy Road on March 31, 2010

25) $2,048 US currency seized from 108 Continental Drive on March 31, 2010

26) $326 US currency seized from 108 Continental Drive on March 31, 2010

27) $13,000 US currency in white safe seized from master bedroom closet of 1732 Oregon Ave on March 31, 2010

28) All funds on deposit in TD Bank account #IM-0368013769, titled to Schuyler Twaddle

29) $200 US currency seized from master bedroom dresser at 9544 James St on March 31, 2010

30) $1,900 US currency seized from master bedroom desk at 9544 James St on March 31, 2010;

31) 2002 Cadillac Deville, PA tag ECV-3684, registered to Joanna Mastronardo, seized from 298 Norristown Road on March 31, 2010

32) 1671 Stocton Drive, Meadowbrook, PA, titled to Joanna E. Mastronardo

33) 2007 Lexus, PA tag HHB-2120, registered to John Vito Mastronardo seized on March 31, 2010

34) 2004 Chevrolet Suburban, PA tag FVT-8851, titled to John V. Mastronardo

35) 2001 Cadillac Deville, PA tag GKD-2751, titled to John Mastronardo seized on March 31, 2010

36) 6 Devonshires Court, Blue Bell, PA, titled to John V. & Mary Angela Mastronardo

37) 2169 66th Ave, Philadelphia, PA, titled to Joseph & Anna Rose Vitelli

38) 6618 Patio Lane, Boca Raton, FL, titled to Harry D. Murray, Jr.

39) 2009 Nissan Armada, PA tag GBP-3414, registered to Edward J. Feighan seized on March 31, 2010

40) 2007 Cadillac Escalade, PA tag GLV-2244, titled to Patrick

Tronoski;

2.    If any of the property subject to forfeiture, as a result of any act or

omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided

        without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property subject to forfeiture,  including, but not

limited to:

    1)    1626 Sylvan Dr, Blue Bell, PA, titled to Patrick & Jennifer
       Tronoski.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d),

and Title 28, United States Code, Section 2461(c).

## NOTICE OF FORFEITURE NO. 3

### (CONCEALMENT MONEY LAUNDERING FORFEITURE)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections

1956(a)(1)(B)(i) and (h) set forth in Count Three, of this indictment, defendants

**JOSEPH VITO MASTRONARDO, JR.**
**JOHN MASTRONARDO**
**JOSEPH F. MASTRONARDO,**
**a/k/a "Joey"**
**ERIC WOEHLCKE**
**HARRY MURRAY**
**JOSEPH VITELLI**
**ANNA ROSE VITELLI, and**
**RONALD GENDRACHI**

shall forfeit to the United States of America:

a.      any property, real or personal, involved in such violations, and any

property traceable to such property, including, but not limited to, the sum of $600,000 United

States currency, for which defendants are jointly and severally liable.

2.      As a result of the violations of Title 18, United States Code, Sections

1956(a)(1)(B)(i) and (h) set forth in Count Five, of this indictment, defendant

**JOSEPH VITO MASTRONARDO, JR.**

shall forfeit to the United States of America:

a.      any property, real or personal, involved in such violations, and any

property traceable to such property, including, but not limited to, the sum of $70,997 United

States currency.

3.      As a result of the violations of Title 18, United States Code, Sections

64

1956(a)(1)(B)(i) and (h) set forth in Count Six, of this indictment, defendants

**JOSEPH VITO MASTRONARDO, JR.**
**JOHN MASTRONARDO**
**ERIC WOEHLCKE**
**HARRY MURRAY**
**MIKE SQUILLANTE**

shall forfeit to the United States of America:

a.    any property, real or personal, involved in such violations, and any property traceable to such property, including, but not limited to, the sum of $95,647 United States currency, for which defendants are jointly and severally liable.

4.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.

## NOTICE OF FORFEITURE NO. 4

## (INTERNATIONAL MONEY LAUNDERING FORFEITURE)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections

1956(a)(2)(A) and (h) set forth in Count Four of this indictment, defendants

**JOSEPH VITO MASTRONARDO, JR.**
**JOHN MASTRONARDO**
**ERIC WOEHLCKE**
**HARRY MURRAY, and**
**KENNY COHEN**

shall forfeit to the United States of America:

a.      any property, real or personal, involved in such violations, and any

property traceable to such property, including, but not limited to, the sum of $3,150,590.68

United States currency, for which defendants are jointly and severally liable.

2.      If any of the property subject to forfeiture, as a result of any act or

omission of the defendants:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

66

property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.

## NOTICE OF FORFEITURE NO. 5

## (INTERSTATE TRAVEL IN AID OF RACKETEERING FORFEITURE)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       As a result of the violations of Title 18, United States Code, Section 1952 set forth in Counts Seven through Fourteen of this indictment, defendant

### JOSEPH VITO MASTRONARDO, JR.

shall forfeit to the United States of America:

a.       any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," including, but not limited to, the sum of $474,028 United States currency.

2.       If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)       cannot be located upon the exercise of due diligence;

(b)       has been transferred or sold to, or deposited with, a third party;

(c)       has been placed beyond the jurisdiction of the Court;

(d)       has been substantially diminished in value; or

(e)       has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c).

## NOTICE OF FORFEITURE NO. 6

### (TRANSMISSION OF WAGERING INFORMATION FORFEITURE)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Section 1084 set forth in Counts Fifteen through Twenty-Two of this indictment, defendants

**JOSEPH VITO MASTRONARDO, JR.
JOHN MASTRONARDO, and
ERIC WOEHLCKE**

shall forfeit to the United States of America:

a.      any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity."

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28,

70

United States Code, Section 2461(c).

## NOTICE OF FORFEITURE NO. 7

## (AGGRAVATED STRUCTURING FORFEITURE)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 31, United States Code, Section

5324(a)(1) set forth in Count Twenty-Three of this indictment, defendants

**JOSEPH VITO MASTRONARDO, JR.**
**JOSEPH F. MASTRONARDO,**
**a/k/a "Joey," and**
**JOANNA MASTRONARDO**

shall forfeit to the United States of America:

a.      any property, real or personal, involved in the offense and any

property traceable thereto, including, but not limited to, the sum of $592,240 United States

currency, for which defendants are jointly and severally liable, and:

1)      $16,669.95 of the funds seized on April 2, 2010 from Vist
Financial, formerly known as Madison Bank, account
#4015304, titled in the name of Joseph and Joanna
Mastronardo

2)      $3,442.97 of the funds seized on April 2, 2010 from Vist
Financial, formerly known as Madison Bank, account
#4072987, titled in the name of Joseph and Joanna
Mastronardo

3)      $203,285.99 of the funds seized on April 2, 2010 from Vist
Financial, formerly known as Madison Bank, account
#7096348, titled in the name of Joseph and Joanna
Mastronardo

4)      $79,000 of the funds seized on April 2, 2010 from Vist
Financial, formerly known as Madison Bank, account
#5008417, titled in the name of Joanna Mastronardo

2.      If any of the property subject to forfeiture, as a result of any act or

omission of the defendants:

(a)      cannot be located upon the exercise of due diligence;

72

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 31, United States Code, Section

5317(c)(1)(B),  incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of

any other property of the defendants up to the value of the property subject to forfeiture,

including, but not limited to:

1)     1671 Stocton Drive, Meadowbrook, PA, titled to Joanna E.
Mastronardo

All pursuant to Title 31, United States Code, Section 5317(c)(1).

**A TRUE BILL:**

_____

**FOREPERSON**


_____

**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**